**Myrtle DAWKINS, Plaintiff,**

v.

**BELLSOUTH TELECOMMUNICATIONS, INC., Defendant.**

No. 99–295–Civ–T–17C.

United States District Court,
M.D. Florida,
Tampa Division.

June 8, 1999.

Merette Oweis, Dicesare, Davidson & Barker, P.A., Lakeland, FL, for Myrtle Dawkins, plaintiff.

Ruth H. Fife, Ford & Harrison, Atlanta, GA, Cathy J. Goodwin, Heinrich, Gordon, Hargrove, Weihe & James, Orlando, FL, for Bellsouth Telecommunications, Inc., defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant's Motion to Dismiss for failure to state a claim upon which relief may be granted (Dkt.14), together with supporting Memorandum of Law (Dkt.15), Plaintiff's Objection (Dkt.18), and Defendant's Reply. (Dkt.22).

### Factual Background

Plaintiff, Myrtle Dawkins, filed this action for declaration and injunctive relief and damages against Bellsouth Telecommunications, Inc., ("Bellsouth") pursuant to the American with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, and the Florida Civil Rights Act ("FCRA"), Fla.Stat. § 760 (1997). (Dkt.2). Plaintiff subsequently amended the complaint to withdraw the claim under the ADA. (Dkt.16).

Plaintiff has made the following allegations. Plaintiff was hired by Bellsouth as a Service Representative on July 2, 1979. In February of 1997, Plaintiff suffered a mental breakdown, went to a psychiatrist, and was admitted to a mental facility for evaluation. In May of 1997, Plaintiff was diagnosed with bipolar disorder and agoraphobia. Plaintiff's physician permitted her to return to work on August 15, 1997, provided she be placed in an isolated working area and work no more than four hours per day from 9:00 a.m. to 3:00 p.m. In October of 1997, Plaintiff was informed that her hours would be changed to 12:30 p.m. to 5:30 p.m. Plaintiff suffered a relapse on November 1, 1997.

Plaintiff was then contacted by an employee of Bellsouth's disability insurance company, who informed her that if she did not return to working full hours within three months, she would be terminated or forced to quit. Upon Plaintiff's return from the Christmas holidays, she found her desk removed from the isolated area and placed in a high traffic area. Plaintiff requested that her desk be returned to the isolated area, however, her superior informed her that she could not accommodate her request because she may be seen as playing favoritism. The next day, Plaintiff suffered a severe panic attack at work and requested, and was approved for, a vacation day for the following day. Upon Plaintiff's return to work, she continued to suffer panic attacks. Plaintiff again requested that her desk be moved to a more isolated area, but this request was denied.

On January 22, 1998, Plaintiff returned from a vacation to find that her desk was again moved. This prompted Plaintiff to file a grievance with her labor union the following day. On February 5, 1998, Plaintiff was contacted by Bellsouth's manager of labor relations who informed her that she would be terminated because Bellsouth could no longer accommodate her special needs. The following day, while on the phone with a customer, Plaintiff was approached by the same superior responsible for moving her desk, and accused of throwing the company's money away for refunding a customer's money. Plaintiff contends that the refund was in accordance with company policy. Immediately following this event, Plaintiff went to her psychiatrist, who placed her off work indefinitely.

On May 19, 1998, Plaintiff was contacted by Bellsouth and advised that if she did not return to work full time, she would be terminated, and her last day on the payroll would be June 10, 1998. Later that evening, Plaintiff attempted suicide by taking an overdose of her prescription medication. Three days later Plaintiff was contacted by another Bellsouth employee, and again advised that failure to return to work full time would result in termination.

On June 10, 1998, Plaintiff returned to work full time. On August 3, 1998, Plaintiff's psychiatrist again placed her off work due to panic attacks suffered in the high traffic area. On August 26, 1998, Kemper Insurance informed Plaintiff that Bellsouth wanted her to return to work full time. On September 4, 1998, Kemper Insurance again telephoned Plaintiff and left a message with her minor child that she was scheduled to return to work on September 8, 1998, and if she did not, there would be "severe consequences." On September 8, 1998, Plaintiff called Kemper Insurance and informed them that she had not been released by her psychiatrist to return to work full time. At that time, Plaintiff was told to return to work full time or not at all.

Under the advisement of her psychiatrist, Plaintiff admitted herself to a mental facility where she was under psychiatric observation from September 15, 1998 through October 3, 1998. After her discharge from the mental facility, Plaintiff was restricted to two hours of work per day in an isolated area. Bellsouth did not accommodate this request.

In Count I of Plaintiff's Amended Complaint, she alleges that she was subject to harassment, based on her disability, in violation of the FCRA. Plaintiff also alleges that she was denied a reasonable accommodation by not being allowed to maintain modified work hours or an isolated work area. Plaintiff asserts that Defendant took adverse employment action against her, which violated her rights under Fla. Stat. § 760 (1997). Plaintiff contends that Defendant's actions were wanton and willful, such that they constituted total disregard to the Plaintiff's rights. For the foregoing reasons, Plaintiff is requesting damages, including exemplary damages, costs and attorney's fees, to function as a punishment and deterrent to future conduct of this nature by Defendant.

### Standard of Review

A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that Plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the Plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Dismissal of the complaint is proper when no construction of the factual allegations will support the cause of action. *Executive 100, Inc. v. Martin County*, 922 F.2d 1536 (11th Cir. 1991).

### Discussion

### Dual Filing

Defendant moves to have Count I of Plaintiff's amended complaint dismissed due to premature filing. Defendant bases this argument in part on the language of Fla.Code § 760.11(1), which provides that the date that the complaint is filed shall be time stamped on its face. In addition, the same provision defines filing as the time at which the clerk is in actual receipt of the document. Fla.Code § 760.11 (1997). Therefore, because the time stamp does not indicate the date of filing with the EEOC and the clerk of the FCRA was not in actual receipt of the complaint until July 13, 1998, the date of filing should represent the date the FCRA received and time stamped the complaint. Defendant moves for dismissal based on Plaintiff's violation of Fla.Stat. § 760.11(4) and (8), which require either a "reasonable cause" determination, or the passage of 180 days before a civil suit may be filed. From July 13, 1998 to the date this complaint was filed, January 5, 1999, only 176 days passed and no reasonable cause determination was issued. Defendant argues that the complaint must therefore be dismissed.

Plaintiff counters Defendant's argument by asserting that the date in which the charge of discrimination was filed with the EEOC is the date that the charge should be deemed filed with the FCRA. Plaintiff reasons that because there is a workshar-

ing agreement between the EEOC and the FCRA, created with the intent to provide an efficient method for complainants to file charges with both entities, the date of filing with either entity is the date that the other should be deemed to have received the charge. Plaintiff supports this argument by providing the Court with an affidavit of Joseph A. Cash, Coordinator of Customer Service and Records Unit for the Florida Commission on Human Relations ("FCHR"). The affidavit states in part:

"The Florida Commission on Human Relations considers the EEOC as an agent for the purpose of filing a charge entering the Florida Commission on Human Relations charge processing system, therefore the Florida Commission on Human Relations considers the date of the charge received by the EEOC as the date the charge was filed with the Florida Commission on Human Relations, even though the Florida Commission on Human Relations may not receive the actual charge from the EEOC until a later date."

Plaintiff therefore asserts that because she filed her charge with the EEOC on May 18, 1998 and 180 days after that is November 14, 1998, her complaint was not filed prematurely under the FCRA.

Defendant responded to this by arguing that *Weaver v. Florida Power and Light*, 1996 WL 479117, *9, 1996 U.S. LEXIS 13403 at 27 (S.D.Fla. July 16, 1997), *aff'd. without op.*, 124 F.3d 221 (11th Cir.1997) rejects the contention that filing with the EEOC automatically deems the complaint filed with the FCHR. In addition, Defendant argues that in *Weaver*, the court noted that the Florida Commission on Human Relations was not granted authority by the legislature to enter into agreements which operate to abrogate statutory filing requirements. *Id.*, 1996 WL 479117 at *10, 1996 U.S. LEXIS at 30. Defendant, further argues that because the FCRA prescribes actual receipt by the Clerk of the FCHR as the appropriate method of filing

a complaint, and does not authorize filing with the EEOC as an alternative, that this Court cannot include an alternative method of filing. Defendant asserts this is because federal courts are entrusted to apply state law, not make it. Defendant contends that this Court is not at liberty to expand the statutory definition of filing.

In *Weaver*, plaintiff claimed that she was denied a promotion based on sex during November and early December of 1993. *Id.* 1996 WL 479117 at *9, 1996 U.S. LEXIS at 25. The first action plaintiff took was to file a claim with the EEOC on April 6, 1994. *See id.* 1996 WL 479117 at *9, 1996 U.S. LEXIS at 26. On the filing form plaintiff indicated that she wanted the charge dually filed with the Broward County Human Rights Division ("BCHRD"), however, nowhere indicated a desire that it be filed with the FCHR. *See id.* The portion of the form which indicates "state or local agency, if any," represents any agency that the claimant wishes the charge to be dually filed with. *See id.* Because plaintiff only indicated the BCHRD on this portion of the form, the charge was not filed with the FCHR. *See id.* On August 28, 1995 plaintiff filed a charge of sex discrimination with the FCHR. *See Id.* 1996 WL 479117 at *9, 1996 U.S. LEXIS at 25. Because claims based on acts which occurred more than 365 days prior to filing a complaint with the FCHR are time barred and the events that plaintiff complained of occurred in November and December of 1993, the defendant moved for summary judgment. *See id.* 1996 WL 479117 at *8, 1996 U.S. LEXIS at 24. Plaintiff contended that because of the worksharing agreement between the EEOC and the FCHR and her indication that the charge be dually filed, she is excused from the statutory requirement of filing with the FCHR. *See id.* 1996 WL 479117 at *9, 1996 U.S. LEXIS at 26.

The 11th Circuit Court of Appeals rejected plaintiff's argument when it affirmed the Southern District of Florida's opinion. *See Weaver v. Florida Power*

*and Light Co.,* 124 F.3d 221 (11th Cir. 1997). In its decision, the trial court placed emphasis on the fact that plaintiff indicated BCHRD and not FCHR on the portion of the filing form relating to other agencies the charge should be dually filed with. *See Weaver,* 1996 WL 479117, at *9, 1996 U.S. Dist. LEXIS 13403 at 27. The court also placed weight on the language of Florida Statute §§ 760.10–760.11 and Chapter 60Y–4 or 60Y–5 of the Florida Administrative Code which contain no provision allowing a plaintiff to file a Section 760 charge with the EEOC or BCHRD instead of the FCHR. *See id.* 1996 WL 479117 at *9, 1996 U.S. LEXIS at 28. Because plaintiff failed to exhaust her administrative remedies, as Fla.Stat. § 760 requires prior to filing a civil lawsuit, the court granted defendant's motion for summary judgment. *See id.* 1996 WL 479117 at *11, 1996 U.S. LEXIS at 35.

In a similar case, the United States District Court for the Middle District of Florida reached a different result. *See Desai v. Tire Kingdom, Inc.,* 944 F.Supp. 876 (M.D.Fla.1996). In *Desai,* plaintiff brought an action against his former employer under the ADA and FCRA. *Id.* Plaintiff filed a charge of discrimination with the EEOC and indicated on the form that he wanted the claim to be dually filed by checking the appropriate box. *See id.* at 880. Furthermore, plaintiff indicated the Florida Commission on Human Relations as the agency with whom he wanted the charge dually filed. *See id.* Defendant moved to dismiss the case for plaintiff's failure to exhaust administrative remedies, as the FCRA requires. *See id.* Defendant argued that plaintiff's failure to file with the FCHR prior to filing his civil lawsuit constituted a failure to exhaust all administrative remedies. *See id.* The District Court, Kovachevich, Chief Judge, found that, "filing a charge with a single agency constituted dual filing as long as the state agency is indicated on the form and check is placed in the box indicating that the charge is to be dual filed." *Id.*

Accordingly, defendant's motion to dismiss was denied. *See id.*

■ Although it may seem that the 11th Circuit's holding in *Weaver* reverses the Middle District of Florida in *Desai,* that is not the case. 1996 WL 479117 at *8, 1996 U.S. Dist. LEXIS 13403 at 24, 944 F.Supp. at 880. The cases are distinguishable on whether the particular state agency that the claimant wished the charge to be dually filed with was indicated on the filing form. When it is not, the case will not be deemed dually filed and the opposite is true if the agency is indicated. Therefore, in the instant case, because when Plaintiff filed her complaint with the EEOC, she checked the box indicating that she wanted it to be dually filed and indicated FCHR for the appropriate state agency, Plaintiff will be deemed to have filed the charge with the FCHR on May 18, 1998. Plaintiff's action should not be dismissed for filing her action was prematurely, since January 5, 1999, the date the action was filed, is more than 180 days after May 18, 1998.

### Administrative Appeals Process

■ Defendant moves to have this complaint dismissed for failure to satisfy the conditions precedent to an FCRA claim. Defendant argues that if filing with the EEOC triggers the FCRA's filing period then a no-cause finding by the EEOC must also trigger the FCRA's appeals process. Therefore, since the EEOC issued a no-cause finding and the FCRA requires the aggrieved to file an administrative appeal upon such a finding and Plaintiff did not do so, this claim must be barred. In support of this proposition, Defendant cites Fla.Stat. § 760.11(7), which provides in part, "if the aggrieved person does not request an administrative hearing within 35 days [of the no-cause determination], the claim will be barred." Defendant further argues that if Plaintiff is not required to go through the FCRA's appeals process any employee could avoid the "initial screening" by the FCHR which the legisla-

ture designed to funnel non-meritorious claims away from the courts.

The language of the worksharing agreement between the FCHR and the EEOC further supports Defendant's proposition. The relevant language provides in part:

"Normally, once an agency begins an investigation, it resolves the charge. Charges may be transferred between EEOC and the Florida Commission on Human Relations within the framework of a mutually agreeable system. Each agency will advise Charging Parties that charges will be resolved by the agency taking the charge except when the agency taking the charge lacks jurisdiction or when the charge is to be transferred in accordance with Section III (DIVISION OF INITIAL CHARGE PROCESSING RESPONSIBILITIES)."

Here, the EEOC did not lack jurisdiction. Furthermore, Section III does not require the initial transfer of the case to the FCHR. Therefore, based on this language, a finding by either agency should operate as a finding by the other. Accordingly, the EEOC's no-cause determination did operate as a no-cause determination by the FCHR.

For the foregoing reasons, Plaintiff's failure to request an administrative hearing operates to bar her claim. Therefore, this Court dismisses Plaintiff's amended complaint in accordance with the above. Accordingly, it is

**ORDERED** that Defendant's motion to dismiss Plaintiff's amended complaint (Dkt.9) is **GRANTED** for failure to state a claim. The Clerk of Court shall enter a final judgment of dismissal.

**DONE and ORDERED.**